**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RADIYA BUCHANAN, et al., | |
| *Plaintiffs*, | |
| v. | **Case No. 1:20-cv-01542-DLF** |
| JOSEPH R. BIDEN, JR., et al., | |
| *Defendants*. | |

## PLAINTIFFS' RESPONSE TO UNITED STATES' SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS

Plaintiffs Radiya Buchanan, Ann Dagrin, and Lindsay Field respectfully submit this Response to the Government's Supplemental Memorandum, ECF No. 65-1 ("Supp. Mem."), in which it argues that, because the Biden Administration now controls the executive branch, "Plaintiffs' requests for equitable relief" against the official-capacity federal defendants ("Federal Defendants") "are now moot." Supp. Mem. 3. The Government's conclusory argument is wrong and provides cold comfort to Plaintiffs compared with the legal certainties of equitable relief.

The Government fails to allege precisely which Federal Defendants have left their roles.[1] Nor does the Government identify *any* policy change or statement by the incoming administration that will ensure the abuses of June 1 do not recur. Plaintiffs' equitable claims are not moot so long as "there is 'any chance' that relief will be effective in securing" to a plaintiff "what she seeks."

---

[1] It states only that former President Donald Trump, former Attorney General William Barr, former Defense Secretary Mark Esper, and "most" of the Park Police Defendants have been succeeded. Supp. Mem. 3 & n.1. But James Murray and Michael Carvajal remain in their roles as Director of the U.S. Secret Service and Director of the Federal Bureau of Prisons, respectively. In addition, Officer Seberling's present status with the Park Police is unclear.

*Almaqrami v. Pompeo*, 933 F.3d 774, 779 (D.C. Cir. 2019) (quoting *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019)).  There is such a chance here.  This Court should decline to dismiss Plaintiffs' claims for equitable relief, as the Government has not met the "demanding standard" for establishing mootness.  *Id.* (quoting *Tempnology*, 139 S. Ct. at 1660).

Plaintiffs seek injunctive and declaratory relief on two independent grounds:  *First*, to alleviate the "ongoing, chilling effects" that they continue to suffer as a result of the Federal Defendants' violent attacks on them, and *second*, for the "threat[s] of future violen[ce]" stemming from Federal Defendants' statements about and defense of their use of violence.  *See generally* Pls.' Opp. to Federal Defendants' Motion to Dismiss, ECF No. 51 at 80–84 (citing, *inter alia*, *Clark v. Libr. of Cong.*, 750 F.2d 89, 93 (D.C. Cir. 1984) (recognizing standing to seek injunctive relief where plaintiff claimed a "chill of his first amendment rights" owing to "specific action taken against [him]")).

The Government's Supplemental Memorandum nowhere addresses the first ground.  And its arguments on the second ground—that any threat abated when "former President Trump and his Cabinet" left office, Supp. Mem. 6–7—disregards the reality that the Biden Administration has not done anything to "repudiate[]" the Federal Defendants' previous views that violence is an appropriate response to peaceful protests, *contra* Supp. Mem. 5 (citing *W. States Ctr., Inc. v. Dep't of Homeland Sec.*, 2021 WL 1896965, at *1 (D. Or. May 11, 2021)).  A mere change in administration, without more, is simply not the requisite "firm representation[]" that Federal Defendants need to offer to defeat the reasonable expectation that they may repeat their prior violence.  *Porup v. CIA*, 2021 WL 2021615, at *6 (D.C. Cir. May 21, 2021).  Moreover, the Government's mootness arguments ignore that violence against protesters spans multiple administrations.  In particular, Plaintiffs plead that the Park Police Defendants' use of violence

against them without warning violates a class settlement ordered by the Honorable Emmet G. Sullivan of this Court in a case against, among others, the Metropolitan Police Department and the *U.S. Park Police*, which arose out of an unconstitutional mass arrest of protestors during the Bush Administration. *See Barham v. Ramsey*, No. 02-cv-2283-EGS (D.D.C.), ECF No. 1040 (July 7, 2015) (cited at First Amended Compl., ECF No. 29 ("FAC") ¶ 56 n.4); *see also Barham v. Ramsey*, 434 F.3d 565, 568–70 (D.C. Cir. 2006).

To the extent the Government argues the new administration has abandoned the previous administration's intent to use "'overwhelming force' against peaceful protesters," Supp. Mem. 4, that is, in effect, an argument that this misconduct will never "start up again," *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)—*i.e.*, that they have voluntarily ceased their unconstitutional behavior. But "[t]he Supreme Court has made it clear" that a court cannot dismiss a case as moot unless "the party urging mootness" can satisfy "two conditions": *First*, the court must "conclude with assurance that there is no reasonable expectation . . . that the alleged violation will recur," and *second*, "it must be plain that interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Zukerman v. U.S. Postal Serv.*, 961 F.3d 431, 442 (D.C. Cir. 2020); *Doe v. Harris*, 696 F.2d 109, 111 (D.C. Cir. 1982) (cleaned up). The Government does not meet this standard.

*First*, Plaintiffs reasonably expect that the constitutional violations will recur because the Federal Defendants refuse to concede the wrongfulness of the violence at Lafayette Park—let alone apologize for the harm the federal government caused. "[W]hen a complaint identifies official conduct as wrongful and the legality of that conduct is vigorously asserted by the officers in question, the complainant may justifiably project repetition, albeit in a different setting, and involving different official actors." *Doe*, 696 F.2d at 113; *accord, e.g.*, *Reeve Aleutian Airways,*

*Inc. v. United States*, 889 F.2d 1139, 1143 (D.C. Cir. 1989) (holding that the Government's "very defense of [the challenged action] makes it more likely that [plaintiff] will be subject to" unlawful conduct in the future).  While the Government's "firm representations" that it will not repeat its illegal acts may suffice, *Porup*, 2021 WL 2021615, at *6, anything less is not enough for "either the Plaintiffs or the Court to be certain that [the Government] will not revert to the prior" misconduct.  *Johnson v. District of Columbia*, 248 F.R.D. 46, 55 (D.D.C. 2008); *accord Payne Enters., Inc. v. United States*, 837 F.2d 486, 492 (D.C. Cir. 1988) (finding inadequate "only modest assurance . . . that the contested practice will not be reinstated").

But here, the Federal Defendants continue to vigorously contest the constitutionality of their conduct and argue that Plaintiffs lack any plausible cause of action against them.  *See generally* Federal Defs.' Mot. to Dismiss Individual-Capacity Claims, ECF No. 34 ("Individual-Capacity MTD") at 33–43 (arguing that former Attorney General William Barr and former Acting Park Police Chief Gregory Monahan did not "participat[e] in any specific constitutional violations," did not "den[y] [Plaintiffs] the ability to protest" and did not "engage[] in any Fourth Amendment violation"); Federal Defs.' Reply Mem. ISO Mot. to Dismiss Individual-Capacity Claims, ECF No. 56 at 17–25 ("[N]either Barr nor Monahan violated any of [Plaintiffs'] clearly established constitutional rights.").  Beyond failing to offer any "firm representations," *Porup*, 2021 WL 2021615, at *6, the Government does not even say Federal Defendants have "no plans" to repeat their illegal conduct, *Johnson*, 248 F.R.D. at 54–55.  Rather, the Federal Defendants remain "free to return to [their] old ways." *Friends of the Earth, Inc.*, 528 U.S. at 189 (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982)).  The Government has thus failed to provide Plaintiffs and this Court "assurance" that a violent attack on free speech will not recur.  *Zukerman*, 961 F.3d at 442.  And although the application of force during the June 1

protest at issue in this case was uniquely offensive, the threat of further violence against protesters is not an idle one.  The courts have been inundated in the past months with allegations of police misconduct in response to protests.  *See, e.g.*, *Breathe v. City of Detroit*, 484 F. Supp. 3d 511, 514–15 (E.D. Mich. 2020) (granting temporary restraining order where plaintiffs alleged "Detroit police have responded to their demonstrations with excessive force and have violated their First and Fourth Amendment rights"); *Index Newspapers LLC v. City of Portland*, 480 F. Supp. 3d 1120, 1124, 1140–41 (D. Or. 2020) (enjoining "Federal Defendants . . . [who] have repeatedly targeted and used physical force against journalists and authorized legal observers who have been documenting the daily Black Lives Matter protests in this city" and finding that "Federal Defendants' voluntary change in enforcement tactics" had not mooted plaintiffs' claims); *Black Lives Matter Seattle-King Cty. v. City of Seattle*, 466 F. Supp. 3d 1206, 1211 (W.D. Wash. 2020) ("What brings the parties to this Court today are peaceful protestors desiring to engage in their rights guaranteed by the Constitution, the freedom of assembly without fear of retaliation or disruption by Seattle police officers' use of tear gas, pepper spray, flash bang devices, or foam-tip bullets.").  There is no reason whatsoever to think that a mere change in administration on its own will protect Plaintiffs and others who seek to protest like them from further harm.  Indeed, if the Government truly does not intend to use violence to suppress peaceful protestors' speech again, the appropriate course is to stipulate to the entry of appropriate declaratory and injunctive relief, rather than to argue that Plaintiffs' equitable claims are moot.

*Second*, the effects of the Government's unconstitutional actions have not been "completely and irrevocably eradicated," *Zukerman*, 961 F.3d at 442 (quotation omitted), because Plaintiffs continue to be chilled in the exercise of their First Amendment rights at Lafayette Park. Where an "aspect" of a plaintiff's First Amendment injury "persists" and "remains 'ongoing,'"

such as when she "complains of past and continuing harm" and alleges that her future conduct will be "impaired" absent relief, her claims remain live. *Id.* at 442–45; *Doe*, 696 F.2d at 113; *see also Ctr. for Food Safety v. Salazar*, 900 F. Supp. 2d 1, 5 (D.D.C. 2012) (finding lack of mootness where "Plaintiffs allege[d] harms that [were] *currently* occurring and [would] continue"). In analyzing this element, "a court should *assume* that the alleged wrong was committed and that the alleged harm occurred, and ask only whether intervening events completely dispel the harm that plaintiff alleges." *Doe*, 696 F.2d at 113 n.7.

Plaintiffs' injuries are nowhere near "eradicated"—indeed, they actively persist to this day, as Plaintiffs continue to "fear[] that law enforcement may return to attack [them] and other peaceful protestors" at Lafayette Park and experience "panic attack[s]" when they return to protest at the Park, as they regularly do. FAC ¶¶ 78, 87; *accord id.* ¶¶ 73, 79. The Government makes no effort in its submission to rebut the ongoing nature of the harms Plaintiffs are experiencing as a result of the Federal Defendants' vicious attack on them. As the Government "must . . . satisf[y]" each of the "two conditions" of the voluntary-cessation analysis, its failure to meet *either* criterion means that it has not "shouldered the heavy burden of demonstrating mootness." *See Doe*, 696 F.2d at 111–12; *accord Ctr. for Food Safety*, 900 F. Supp. 2d at 5 ("Both conditions must be satisfied for a case to be considered moot . . . ."). The change in administration, therefore, does not moot Plaintiffs' requests for injunctive and declaratory relief.

The Government's reliance on *Spomer v. Littleton,* 414 U.S. 514 (1974), and *Mayor of Philadelphia v. Educational Equality League*, 415 U.S. 605 (1974), is misplaced. In *Spomer,* the original defendant, a State's Attorney, was sued for a "practice of . . . racial discrimination," but "[n]o charge [was] made in the complaint that the policy of the office of State's Attorney [itself was] to follow the intentional practices alleged" beyond the original defendant's actions. 414 U.S.

at 521.  In *Mayor of Philadelphia,* the Supreme Court held that the Third Circuit "erred in ordering prospective injunctive relief against the new Mayor in a case devoted exclusively to the personal appointment policies of his predecessor."  415 U.S. at 613.  In each case, injunctive relief was inappropriate absent evidence that the successor continued the original officeholder's racially discriminatory policies.  *Id.* at 612, 622–23; *Spomer*, 414 U.S. at 521–22.  Unlike in those cases, Plaintiffs here allege ongoing injury supporting equitable relief and ongoing injury to First Amendment rights.  And neither of those cases involved lawsuits against multiple government officials alleged to have engaged in misconduct where many of those same officials remain at their posts.  Also unlike those cases, defendants here have used their offices to publicly defend the propriety of the illegal conduct for which they were sued.  *Cf., e.g.*, FAC  ¶ 110 (White House's official statement that "the President is not 'sorry'"); *id.* ¶ 111 (President's statement that protesters could be "met with serious force!").  These are still the official positions of the federal government.  And they will be until the Federal Defendants announce otherwise.  Accordingly, the Government fails to demonstrate that Plaintiffs' equitable claims are moot.

At the same time, the Government's Supplemental Memorandum establishes that Plaintiffs' individual-capacity claims should succeed.  Specifically, the Supplemental Memorandum confirms that defendants like former Attorney General Barr are not entitled to qualified immunity.  The Government's submission concedes that these recently departed officials were *so* personally involved in the violations of Plaintiffs' rights that, in the Government's view, the mere change of administration moots prospective relief.  *See* Supp. Mem. 3–4, 6.  The Government cannot have it both ways:  Either former Attorney General Barr and the other prior Federal Defendant officeholders were personally involved in the violence at Lafayette Park such that their departure from office alone reduces the risk of future violence, or they were not

personally involved in the constitutional violations, *see* Individual-Capacity MTD 32–43, in which case the change in administration is irrelevant.  Not only has the Government failed to prove Plaintiffs' equitable claims are moot, but it has now proven conclusively that qualified immunity is inapplicable, too.

## CONCLUSION

"The burden was on the [Government] to demonstrate mootness, and this the [Government] has not done."  *Atl. Richfield Co. v. U.S. Dep't of Energy*, 769 F.2d 771, 784 n.92 (D.C. Cir. 1984). Accordingly, its request to dismiss the equitable claims as moot should be denied.

Dated:      May 26, 2021

Respectfully submitted,

/s  Greta B. Williams_____

Greta B. Williams (D.C. Bar No. 1006968)
Naima L. Farrell (D.C. Bar No. 1023230)
Brittany Raia (D.C. Bar No. 1044115)
Matthew Guice Aiken (D.C. Bar No. 1616755)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Tel:  202.955.8500
GBWilliams@gibsondunn.com
NFarrell@gibsondunn.com
BRaia@gibsondunn.com
MAiken@gibsondunn.com

Randy M. Mastro (*pro hac vice*)
Orin Snyder (*pro hac vice*)
Mylan L. Denerstein (*pro hac vice*)
Anne Champion (*pro hac vice*)
Katherine Marquart (*pro hac vice*)
Lee R. Crain (*pro hac vice*)
Amanda L. LeSavage (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Tel:  212.351.4000
RMastro@gibsondunn.com
OSnyder@gibsondunn.com
MDenerstein@gibsondunn.com
AChampion@gibsondunn.com

8

KMarquart@gibsondunn.com
LCrain@gibsondunn.com
ALeSavage@gibsondunn.com

*Counsel for Plaintiffs Radiya Buchanan,
Ann Dagrin, and Lindsay Field*