## SETTLEMENT AGREEMENT BETWEEN
## PLAINTIFFS AND THE UNITED STATES OF AMERICA

This Settlement Agreement is entered into by and between Plaintiffs, on the one hand, and the United States of America ("United States"), on the other hand (both terms as defined herein; collectively, the "Parties"), effective March 30, 2022 (the "Effective Date," as defined herein), in the civil action entitled *Radiya Buchanan et al. v. Donald Trump*, 1:20-cv-1542 (DLF). The Parties believe that partial settlement of this action, without any admission of liability, as of the Effective Date of this Settlement Agreement, is in their best interests and best serves the interests of justice by conserving resources, time, fees, and costs in connection with this action. In exchange for the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, each intending to be legally bound, hereby agree to the following terms and conditions.

## A.    Definitions

For purposes of this Settlement Agreement:

1.    "Plaintiffs" shall refer to all Plaintiffs in the First Amended Complaint (hereafter "Complaint") filed on September 3, 2020 (ECF No. 29).

2.    The "United States" shall refer to the United States of America and its agencies and instrumentalities, including the Federal Defendants named in the Complaint, and their present and former officials, employees, and agents, in their official capacities.

3.    The "Effective Date" shall refer to the date on which both parties sign this Settlement Agreement.

**B.**     **Covenants of the United States as Conditions Precedent to Plaintiffs' Obligations**

1.     The United States Park Police agrees to revise and reissue its General Order 2301 (Demonstrations and Special Events) as reflected in **Attachment A** to this Settlement Agreement, which is incorporated herein by reference.  The U.S. Park Police agrees to finalize these revisions within thirty (30) days of the Effective Date of this Settlement Agreement and post them publicly online.

2.     The U.S. Secret Service agrees to revise and reissue its UND [Uniformed Division]-13 Policy to include the following language:

> The fact that some individuals in a crowd have engaged in unlawful conduct does not normally provide blanket grounds for use-of-force countermeasures, crowd dispersal, or declaration of an unlawful assembly.

The U.S. Department of Homeland Security agrees to finalize this revision within thirty (30) days of the Effective Date of this Settlement Agreement.

**C.**     **Covenants of Plaintiffs**

1.     Plaintiffs shall fully release, forgive, and discharge the United States, its officers, agents, and employees, for all claims for equitable relief arising from or that could have been asserted by Plaintiffs as a result of the allegations in the Complaint under any theory of liability (including any request for attorneys' fees and costs in prosecuting such claims for equitable relief, including the ones in this case), including any such claims or lawsuits in any other proceeding or forum.

2.     Within seven (7) days of the Effective Date of this Settlement Agreement, Plaintiffs agree to file a joint stipulation of dismissal of their claims for equitable relief against the United

States, with prejudice, under Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, each Party to bear its own fees and costs.

**D.      General Provisions**

1.      <u>No Admission of Liability</u>.  In entering into this Settlement Agreement, there is no admission of liability by the United States or admission of any factual contentions that have been asserted by Plaintiffs in this litigation.  Plaintiffs do not suggest or concede a lack of merit to their claims or to any factual contention that has been asserted by Plaintiffs in this litigation.

2.      <u>Non-Severability</u>.  The Parties do not intend this Settlement Agreement to be severable absent express written agreement by the Parties.

3.      <u>Costs</u>.  The Parties agree to bear their own fees and costs with respect to this Settlement Agreement.

4.      <u>Return of Documents</u>.  Plaintiffs shall destroy any copies of draft policies provided by counsel for the United States, including any copies thereof, that are subject to the Protective Order (ECF No. 76) within thirty (30) days of the filing of the stipulation of dismissal referenced in Paragraph C.2.

5.      <u>Complete Agreement and Amendments</u>.  This Settlement Agreement constitutes the complete agreement between the Parties.  This Settlement Agreement may not be amended except by written consent of the Parties.

6.      <u>Non-Federal Defendant and Individual-Capacity Claims</u>.   This Settlement Agreement does not encompass nor encumber Plaintiffs' advance of claims against any non-Federal Defendants nor the claims against the named federal officials in their individual capacities under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

The United States will be a non-party to the litigation of claims against any non-Federal Defendants or named federal officials in their individual capacities.

7.     Disclosure of Agreement to Public.  All parties consent to any party's disclosure of this Settlement Agreement, and information about this Settlement Agreement, to the public.

8.     Authority of Signatories.  Each party and signatory to this Settlement Agreement represents that it freely and voluntarily enters into this Settlement Agreement without any degree of duress or compulsion.   Undersigned counsel represents and warrants that they are fully authorized to execute this Settlement Agreement on behalf of the Parties.

9.     Choice of Law.  This Settlement Agreement is governed by the laws of the District of Columbia.

10.    Notice and Cure.  In the event of any alleged or actual violation of this Settlement Agreement, Plaintiffs through counsel shall provide written notice of such to the United States through undersigned counsel for the United States.  The United States shall have sixty (60) days to remedy any violation prior to Plaintiffs seeking enforcement though a breach of contract claim.

11.    Enforcement.  The remedy for enforcement of any right created by this Settlement Agreement is by way of a claim for breach of contract subject to the notice and cure provision set forth in Paragraph D.10 above and the other terms of this Settlement Agreement.  Any breach of contract is presumed to cause Plaintiffs irreparable harm.   The Parties agree that venue and jurisdiction is proper over an original action to enforce this Settlement Agreement only in the U.S. District Court for the District of Columbia.

12.    Expiration.  This Settlement Agreement, and its terms, shall expire automatically one year after the policy changes described in Paragraph B are implemented.

13.    <u>No Precedent</u>.  The terms of this Settlement Agreement will not be cited as evidence

or background information in any civil case or administrative action or proceeding, and will not

establish any precedent, nor will this Settlement Agreement provide a legal basis for Plaintiffs or

any representative organization to seek or justify similar terms in any subsequent or pending case,

except in an action by Plaintiffs alleging a breach of this Settlement Agreement.

FOR PLAINTIFFS:                          Date:    ___April 13, 2022_____

                                         By:    _____

Randy M. Mastro *(pro hac vice)*          Greta B. Williams (D.C. Bar No. 1006968)
Orin Snyder *(pro hac vice)*              Naima L. Farrell (D.C. Bar No. 1023230)
Anne Champion *(pro hac vice)*            Matthew Guice Aiken (D.C. Bar No. 1616755)
Katherine Marquart *(pro hac vice)*       GIBSON, DUNN & CRUTCHER LLP
Lee R. Crain *(pro hac vice)*             1050 Connecticut Avenue, N.W.
Amanda L. LeSavage *(pro hac vice)*       Washington, D.C. 20036-5306
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193

FOR THE UNITED STATES OF AMERICA:

MATTHEW M. GRAVES                         BRIAN P. HUDAK
United States Attorney                    Acting Chief, Civil Division

By: _Christopher C. Hair_____         ___April 13, 2022_____
CHRISTOPHER C. HAIR                       Date
Assistant United States Attorney, Civil Division
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530

ATTACHMENT A



| U.S. DEPARTMENT OF THE INTERIOR NATIONAL PARK SERVICE **UNITED STATES PARK POLICE** | **2301** |
|---|---|

| **GENERAL ORDER** |
|---|
| **DEMONSTRATIONS AND SPECIAL EVENTS** |

**Notes:** This policy document replaces G.O. 2301 - Demonstrations and Special Events - NCR (02-23-04). The contents of *Force Memorandum No. 8 (Series 2015) – Coordination with Other Law Enforcement Agencies and the Handling of Possible Violations by Other Agencies During Such Situations* have also been incorporated into this policy document and that Force Memorandum is therefore rescinded.

| **DOI/NPS References:** | **Related Policy Materials:** |
|---|---|
| <ul><li>446 DM 20</li><li>D.O. 53</li><li>NPS Management Policies (2006), Section 8.6 – Special Park Uses</li><li>RM 53</li></ul> | <ul><li>G.O. 12.00 *Force Legal Advisor*</li><li>G.O. 2108 *High-Volume Arrests*</li><li>G.O. 3605 *Defensive Equipment*</li><li>G.O. 3615 *Use of Force*</li><li>G.M. *Civil Disturbance Unit*</li><li>USPP Form ## - [Title] (A form to record the circumstances and observations of officers related to uses of force during a demonstration or special event.)</li></ul> |
| **Publication/Effective Date:** <mark>MM-DD-YY</mark> | **Authorized By:**<br><br>Pamela A. Smith, Chief of Police |

## I.    POLICY

The United States Park Police (USPP) shall facilitate the public's attendance of special events and protect individual rights related to all persons and groups to organize and participate in peaceful demonstrations, protests, and other First Amendment activities, subject to reasonable restrictions designed to protect public safety, persons, and property, and to accommodate the interests of persons not participating in the assemblies.

## II.    PURPOSE

This General Order sets forth guidance and procedures for all sworn personnel carrying out the mission of the USPP when interacting with persons attending special events and/or exercising their constitutional rights and expressing their views protected by the First Amendment to effectively manage crowds to prevent loss of life, injury, or property damage, and to minimize disruption to persons who are not involved.

ATTACHMENT A

## III.    DEFINITIONS

A.    <u>Civil Disturbance</u> – An unlawful assembly that constitutes a breach of the peace or any assembly of persons where there is a threat of collective violence, destruction of property, or other unlawful acts. Civil disturbances are often, but not always, spontaneous occurrences that may require the emergency mobilization of law enforcement officers and related emergency services.

B.    <u>Civil Disturbance Unit (CDU)</u> – An organized, mobile law enforcement force equipped and trained to provide rapid and disciplined response to civil unrest.

C.    <u>Crowd Control</u> – Techniques used to address civil disturbances, to include a show of force, crowd containment, dispersal equipment and tactics, and preparations for multiple arrests.

D.    <u>Crowd Intervention</u> – Actions taken by an officer(s) to deter, isolate, and/or remove individuals engaging in unlawful behavior that impacts public safety while allowing the event, activity, or occurrence to continue if possible.

E.    <u>Crowd Management</u> – Techniques used to manage lawful assemblies before, during, and after the event for the purpose of maintaining lawful status and public safety through event planning, pre-event contact with event organizers, issuance of permits when applicable, information gathering, personnel training, and other means.

F.    <u>Defensive Equipment</u> – authorized equipment utilized by an officer(s) to gain control of an individual or group of individuals, or to effect an arrest to ensure the protection of the public, the officer, and any arrestees.

G.    <u>Demonstrations</u> – Demonstration activity is defined as any protest, rally, march, vigil, gathering, assembly, or similar conduct engaged in for the purpose of expressing political, social, religious, or other similar ideas, views or concerns protected by the First Amendment of the United States Constitution.

H.    <u>Event</u> – a gathering of people which includes special events, demonstrations, or any other activity or incident likely to attract a crowd to include First Amendment activities. This term does not include casual park use by visitors or tourists.

I.    <u>Exigent Circumstances</u> – An emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect, or destruction of evidence.

J.    <u>Incident Commander</u> – The USPP official with the overall responsibility for managing an incident, following the standardized Incident Command System roles under the National Incident Management System (NIMS).

ATTACHMENT A

K.    <u>Incident Command System (ICS)</u> – The standardized incident organizational structure established by the NIMS for the management of all incidents.

L.    <u>National Incident Management System (NIMS)</u> – is a standardized approach to incident management developed by the United States Department of Homeland Security intended to facilitate coordination between all responders at the scene of an incident.

M.    <u>Rules of Engagement</u> – standing orders that encompass an assessment of intelligence regarding potential or active unlawful activity, the initial deployment of defensive equipment, the expectations of USPP sworn personnel responding to unlawful activity, and the initial response strategy and techniques.

N.    <u>Special Events</u> – an event or gathering which includes sports events, pageants, celebrations, historical reenactments, regattas, entertainments, exhibitions, parades, fairs, festivals, and similar events (including such events presented by the National Park Service), which are not demonstrations under Section II. D., and which are engaged in by one or more persons, the conduct of which has the effect, intent, or propensity to draw a crowd or onlookers.

O.    <u>Special Event Agreement</u> – a written agreement authorized by 54 U.S. Code § 102701(b) with other law enforcement agencies for the purpose of ensuring additional law enforcement officers are available if necessary.

## IV.    GENERAL PROVISIONS

A.    The USPP may take appropriate actions necessary to maintain public health and safety, to protect environmental or scenic values, to protect natural or cultural resources, or to implement management responsibilities, equitable allocation and use of facilities, or the avoidance of conflict among visitor activities.

Such actions may include but are not limited to

1.    limiting public use or closing areas to use;

2.    designating areas for specific uses; and

3.    terminating restrictions, limits, closures, or visitor hours (36 CFR 1.5; 36 CFR 7.96).

B.    The operational priorities of managing an event are:

1.    Safeguarding and protecting human life;

2.    Safeguarding and protecting cultural and natural resources;

3.    Protecting visitors not associated with the demonstration or special event;

ATTACHMENT A

4. Providing a safe area for all demonstrators to exercise their First Amendment rights; and

5. Maintaining law and order throughout the event area.

C. The Incident Commander or designee shall direct the officers and units under their command in the employment of crowd management, crowd intervention, and crowd control techniques through their established Rules of Engagement and on-scene communications. However, in those situations where communication with and guidance from the Incident Commander is not feasible, officers are expected to follow other applicable USPP policies and to rely upon their training, experience, and their reasonable belief as to what level of force (if any) is necessary under the circumstances.

D. In situations where basic crowd control techniques are insufficient to restore order or are likely to expose officers and non-participating members of the crowd to risk of injury, the Incident Commander may elect to deploy the Civil Disturbance Unit which is a specialized police unit consisting of highly trained and equipped sworn personnel whose mission is to bring a situation under control during violent disorder, unlawful civil disturbances, law enforcement emergencies, and other critical situations that exceed the capabilities of the routine patrol officer or traditional crowd control techniques, while acknowledging and respecting the right of the people to peacefully assemble.

E. During all special events and demonstrations, USPP sworn personnel excluding plain clothes personnel, shall ensure they are clearly identifiable as members of USPP, and their badges and nameplates are in public view, including on all outerwear, tactical gear, and helmets.

1. In the event, that officers are wearing tactical gear and/or helmets, their outermost gear and helmets shall display identifying names or numbers that are clearly visible.

2. No officer shall tamper with or cover their badge or nameplate or other identification for the purposes of concealing their identity.

F. All USPP sworn personnel shall

1. respond to demonstrations and special events in accordance with incident objectives and applicable agency policies and procedures to preserve peace while protecting the constitutional and statutory rights of persons to assemble peacefully and exercise free speech;

2. avoid any engagement in demonstration-related discussions or activities with participants, and shall conduct themselves to display an attitude of neutrality; and

ATTACHMENT A

    3.    always conduct themselves in a professional manner, in accordance with applicable policies and procedures.

G.    No sworn personnel shall discriminate based on race, color, sex, national origin, religion, sexual orientation, gender identity or expression, disability, or viewpoint.

## V.    EVENT PLANNING AND ON-SCENE ASSESSMENT

A.    <u>General Considerations</u>

    1.    Events shall be managed in accordance with the methodologies consistent with the Incident Command System (ICS) as established by the <u>National Incident Management System (NIMS)</u>. Generally, this will be performed by the Incident Commander.

    2.    Incident Commander responsibilities apply regardless of rank and should be implemented as soon as possible.

    3.    The Incident Commander shall

        a.    assess the situation for seriousness and its potential for escalation;

        b.    determine the initial rules of engagement; and

        c.    ensure the Rules of Engagement are briefed to all USPP sworn personnel prior to any planned event or whenever feasible during unplanned event.

    4.    In assessing and/or planning for a demonstration or special event, the following shall be considered:

        a.    Location and footprint of the demonstration/special event

        b.    Number of attendees (both anticipated and potential)

        c.    The need for traffic control, barricades, and barriers

        d.    The need for temporary barricades or fencing to establish exclusion areas, separate opposing groups, or establish ingress and egress chutes

        e.    Ingress and egress plans for personnel, equipment, and other resources such as EMS, etc.

        f.    Ingress and egress for event attendees

        g.    Transportation plan

        h.    Intelligence briefings regarding potential threats

        i.    Assessing and scheduling explosive detection sweeps

ATTACHMENT A

    j.    Invoicing for USPP/NPS staffing expenses associated with the support of the special event.

    k.    Coordinating media access

    l.    Assisting planners/organizers with the development of a security plan

    m.    Coordinating with law enforcement, Fire, and EMS partner agencies regarding resources for law enforcement response, medical response, and other critical incident response

    n.    Potential for counter-demonstrations/opposing groups

    o.    Potential need for crowd management, crowd control, and civil disturbance units.

    p.    Civil Disobedience

    q.    Planning, preparing, and executing operations within the parameters set forth in the National Incident Management System (NIMS)

5.    The USPP, through the Special Events Unit (SEU) or Incident Commander, shall establish and maintain communication lines with assisting agencies and event organizers.

6.    The Incident Commander and or designee shall document efforts and frequency of communication, along with any failures in communication via their initial incident report or through a supplemental report.

7.    Counter-protests or other First Amendment activities in reaction to a special event or demonstration shall be accommodated with measures taken to identify and resolve the potential for violence or other unlawful actions by members of either or any group.

B.    <u>Planned and/or Permitted Events</u>

1.    The USPP SEU, or Field Office equivalent, in coordination with the National Park Service (NPS) Permits Office shall meet with representatives of planned events.

2.    During the meeting, any conditions of park usage and restrictions shall be communicated to the representatives of an event in an effort to manage expectations and inform the representatives of an event of NPS rules and regulations pertaining to events.

ATTACHMENT A

3.      The SEU and Permits Office shall facilitate communication and the discussion of park use to include conditions explained in Section IV General Provisions B, C, E and G and the objectives of the planner/organizer.

4.      Special Events Agreements shall be completed in advance of the demonstration or special event.

5.      Based on the individual and specific operational needs of each special event or demonstration, the SEU shall designate leadership roles and organization in accordance with methodologies consistent with NIMS/ICS during the planning process.  As such, the roles of Incident Commander, Command Staff, General Staff, and resource units, are unique to each event, and assigned to effectively execute the incident objectives during an operational period.

6.      The USPP, through the SEU or Incident Commander, shall establish and maintain communication lines with event organizers.

7.      If communications between the USPP and event organizers fail, the SEU and/or Incident Commander shall document when and how efforts to communicate have failed.

8.      In addition to the procedures in G.O. 12.00 Force Legal Advisor, the SOL Divisions of Parks and Wildlife (DPW) shall be consulted in advance of the demonstration or special events where there are concerns regarding the potential for future litigation or there is a perceived need for legal advice. DPW may provide either on-scene or telephonic assistance.

C.      Unplanned Events

1.      Whenever an unplanned First Amendment assembly arises, the first officer on the scene shall:

   a.      Assume the role of Incident Commander until relieved;

   b.      Notify the Dispatch Operations Unit, a supervisor, and the Shift Commander's Office of the nature and size of the gathering and request the assistance of a supervisor;

   c.      Attempt to identify and engage the group organizers or leaders to determine

      i.       the duration of the event,

      ii.      the number of persons expected to attend, and

      iii.     if civil disobedience is anticipated or planned;

ATTACHMENT A

   d. Determine whether the gathering as a whole is peaceful, has become violent, or has the potential to turn violent; and

   e. Attempt to identify any criminal activity and isolate the involved individuals.

  2. The Incident Commander or Shift Commander's Office can requestor designate a Liaison Sergeant or request the SEU Commander to respond to the scene.

  3. In the case of First Amendment assemblies, if the assembly is peaceful and adequate resources are available, efforts shall be made to allow for the protest action to continue by redirecting vehicular and pedestrian traffic around the incident.

  4. In addition to the procedures in General Order 12.00 Force Legal Advisor, if the incident requires immediate or emergency legal counsel, the Incident Commander shall contact a representative of the DPW directly who may provide on-scene or telephonic advice.

## VI. RULES OF ENGAGMEMENT AND LEVELS OF RESPONSE

 A. Absent exigent circumstances, the Incident Commander shall determine the Rules of Engagement to

  1. ensure the safety of officers, participants, or non-participating members of the public;

  2. maintain order;

  3. protect NPS natural and/or historical resources;

  4. protect other public and private property; and

  5. any other valid public safety or law enforcement concern.

 B. Depending on the nature of the crowd, exigent circumstances, or any other valid public safety or law enforcement concern, the following response techniques may be utilized:

  1. <u>Crowd Management</u>

   a. During special events and demonstrations, the USPP may utilize a law enforcement presence for Crowd Management purposes to protect an event's lawful activities.

   b. Crowd management may be utilized as the lowest level of response and includes strategies and tactics employed before, during, and after a gathering.

ATTACHMENT A

    c.    These strategies include but are not limited to

        i.    traffic posts,

        ii.    foot beats/posts,

        iii.    security fencing plans, and

        iv.    screening procedures for prohibited items.

2.    <u>Crowd Intervention</u>

    a.    The USPP may utilize Crowd Intervention within pre-planned or spontaneous activities to deter, isolate, and/or remove those individuals engaging in unlawful behavior that impacts public safety, while allowing the event, activity, or occurrence to continue if possible.

    b.    Crowd Intervention techniques may include, but are not limited to

        i.    individual officer response, and

        ii.    group officer response, with the purpose of removing, detaining, or arresting individuals engaged in unlawful behavior.

3.    <u>Crowd Control</u>

The USPP may utilize Crowd Control within pre-planned or spontaneous activities that have become unlawful or violent and may require dispersal of the crowd. Crowd Control techniques include but are not limited to

    a.    Basic formations such as line, wedge, and echelon,

    b.    Civil Disturbance Unit response,

    c.    Horse Mounted CDU Response, and

    d.    SWAT tactical response.

C.    If any of the above techniques are employed, liaison officers shall inform assisting agencies of the crowd management, intervention, and control actions being undertaken and, when practicable, shall provide as much advance notice as possible.

D.    If the crowd is a demonstration engaging in unlawful acts, no area will be closed around them by using a police line to encircle, or substantially encircle them, except when

ATTACHMENT A

    1.      probable cause exists to believe that a significant number or percentage of the persons located in the area have committed unlawful acts,

    2.      the USPP can identify those individuals and have decided to arrest them, and

    3.      that the area needs to be closed to help maintain order and public safety during the arrest process.

E.      If arrests are necessary, such action should only be taken when enough officers and resources are available to safely conduct an arrest.

F.      Officers shall follow the procedures set forth in the G.O. 2108 High Volume Arrests.

## VII.  WARNING AND DISPERSAL ORDERS

A.      A permit for a planned event may be revoked by the Incident Commander if continuation of the event presents clear and present danger to the public safety, good order, and health, or for any widespread violation of applicable law or regulation that poses significant threat to persons or property. A permit issued for a special event is revocable at any time at the reasonable discretion of the Incident Commander.

B.      Similarly, during an unplanned or unpermitted event, the USPP Incident Commander may also close or clear people from an area for public safety or resource protection purposes.

C.      Absent exigent circumstances, members of a crowd shall be given the opportunity to withdraw peacefully and disperse.

    1.      An exit route favorable to public safety needs should be designated and made available wherever possible.

    2.      Other law enforcement agencies operating in the area shall be notified of the exit routes to ensure that they are not blocked.

D.      When it becomes necessary to effect a peaceful dispersion of a crowd, the Incident Commander or designee shall issue warning and dispersal orders.

E.      Wherever possible, steps shall be taken to ensure that the participants in all areas of the crowd are able to hear the warning and dispersal orders. The nature of these steps may vary based on the circumstances and the means available to the USPP at the time of the dispersal order, but may include,

    1.      use of amplification technology when available,

    2.      use of officers within and/or around the crowd,

ATTACHMENT A

3.    positioning of uniformed officers throughout the crowd to determine that the warnings are audible,

4.    instructing officers to repeat the dispersal order via available amplification techniques; and/or

5.    repeating the dispersal orders via the public address systems of police vehicles moving around the crowd.

F.    The warning and dispersal order shall be repeated three times, with approximately two (2) minutes between each warning, to give those who choose not to be arrested time to leave the immediate area. A dispatcher shall be asked to give a time check prior to issuing the first warning.

Note: Where specific routes of egress have been identified, the crowd should be notified as part of the warning.

1.    SAMPLE WARNING AND DISPERAL ORDER FOR PERMITTED ACTIVITY:

Attention. This is _____ of the United States Park Police. The permit for this activity has been revoked and this area has been closed. You must leave _____ now. All persons remaining in _____ may be arrested. This is your _____ warning.

2.    SAMPLE WARNING AND DISPERSAL ORDER FOR UNPERMITTED ACTIVITY:

Attention. This is _____ of the United States Park Police. Because this area has been closed, you must leave _____ now. All persons remaining in _____ may be arrested. This is your _____ warning.

G.    Where possible, the Incident Commander shall balance the ability of the crowd to disperse via the available points of egress against the potential for serious injury if more time is allowed to elapse.

H.    The decision to revoke a permit or to clear demonstrators from an area shall in no way be based on the race, color, sex, national origin, religion, sexual orientation, gender identity or expression, disability, or viewpoint of the demonstrators.

**VIII.  USE OF FORCE DURING DEMONSTRATIONS AND SPECIAL EVENTS**

A.    All officers shall adhere to G.O. 3615 Use of Force.

B.    Nothing in this General Order shall prevent an officer from using necessary force to protect members of the public and other officers subject to threat of immediate

ATTACHMENT A

physical harm, when no other options are feasible, and the force used is objectively reasonable and proportionate to the perceived threat.

C.     When reasonable and safe to do so, the Incident Commander shall seek to employ de-escalation tactics and techniques to bring an incident under control while promoting the safety of officers and the public while also minimizing the need to employ force and the risk of unintended injury or serious property damage.

D.     Absent exigent circumstances, gas masks and shields shall not be displayed or used for crowd control response unless approved by the Incident Commander or his/her designee at the rank of lieutenant or higher.

Note: Members of the CDU and SWAT are authorized to display and use their defensive equipment when they are deployed and as guided by the Incident Commander. See Section IX Civil Disturbances.

E.     A situation may arise during a demonstration or an event where there is threat of immediate physical harm to members of the public, USPP sworn personnel, and/or other emergency responders.

1.     When feasible, USPP sworn personnel will request authorization via USPP radio communications before deploying defensive equipment when crowd intervention is reasonable under the circumstances. If authorization was not feasible under the circumstances, USPP sworn personnel shall notify the Incident Commander of any deployment of defensive equipment as soon as possible.

2.     If the use of defensive equipment has been authorized for crowd control response, officers shall not be expected to seek further authorization for each individual use of defensive equipment.

3.     In exigent circumstances or where there is a threat of immediate physical harm, officers shall exercise their discretion and good judgment on the use of defensive equipment during crowd intervention and/or crowd control responses.

4.     All such uses shall be in accordance with G.O. 3615 Use of Force and G.O. 3605 Defensive Equipment.

F.     The actions of or recommendations by representatives of other law enforcement agencies shall be only one factor that determines the use of force by USPP sworn personnel.

G.     Absent exigent circumstances, only the Chief of Police or their designee at the rank of Major or higher can authorize the use of CS gas.

ATTACHMENT A

H.    All officers directly involved in a demonstration or special event response shall document their actions and observations in USPP Form _____ if the event involves

    1.    a civil disturbance;

    2.    use of compliance techniques and defensive tactics as defined by G.O. 3615 Use of Force;

    3.    violent acts by members of the public; or

    4.    any law enforcement and/or public safety emergency which is likely to result in litigation against the agency or officer(s) involved.

## IX.    CIVIL DISTURBANCES

A.    Participants in a civil disturbance may employ any number of unlawful actions to achieve their goals. These actions may be planned or spontaneous and may be violent or non-violent in nature.

B.    The situations that could evolve into a violent civil disturbance are numerous and varied. Often there will be little or no warning before the onset of violence or property damage. In many instances, it may be possible to predict a level of civil disturbance by the nature of a pre-planned event.

C.    Each civil disturbance situation is unique and the Incident Commander shall plan and respond according to the

    1.    nature and size of the disturbance;

    2.    the safety of officers and members of public;

    3.    the potential risk to non-law enforcement first responders and other civilian employees (e.g. maintenance crews);

    4.    the need for additional resources to respond to such an event successfully and safely;

    5.    the number of individuals attempting to agitate violence relative to the number(s) of curious bystanders and/and or sympathetic onlookers;

    6.    the known or perceived objectives and/or degree of organization of the individuals engaging in unlawful behavior;

    7.    responsiveness of the crowd to normal crowd control techniques;

    8.    environmental factors, including

        a.    lighting,

        b.    terrain,

ATTACHMENT A

    c.    weather;

    d.    the effectiveness of communications; and

    e.    the crowd's access to potential weapons (e.g., bricks, rocks, paving stones, etc.).

D.    The Incident Commander shall continuously assess the situation and may choose to deploy the CDU and/or SWAT.

E.    The Incident Commander may deploy the CDU

    1.    in response to both planned and/or permitted events as well as unplanned events; and/or

    2.    based on previous or gathered intelligence, threats, anticipated civil disturbance, or on-scene observations.

        a.    The decision to activate and subsequently deploy CDU in response to any incident involving civil unrest or related incidents should be made with careful consideration.

        b.    Regardless of whether the situation is occurring in the present or if there is time to plan for potentially volatile events, the CDU response should be consistent with the nature of the incident and the behaviors of the individuals involved.

        c.    Pre-planned deployments should be organized jointly between the USPP Special Events Unit in conjunction with the acting CDU Commander.

        d.    The CDU will generally organize in anticipation of assemblies, gatherings, and/or events where there is information, intelligence, and/or the threat of unlawful activity which has the propensity for violence or significant property destruction.

        e.    Members of the CDU shall deploy in the appropriate level of PPE, as outlined within the *Guideline Manual Civil Disturbance Unit*, and take crowd control measures as directed by the Incident Commander through the Platoon Commander.

        f.    The Incident Commander has the authority and command over the entire scene even if geographically located in different areas and is expected to provide clear commander's intent and applicable rules of engagement. However, individual command officials may independently direct the actions of a squad, platoon, or other

ATTACHMENT A

element when detached from the rest of the unit command element (Ex. CDU, SWAT, etc.).

F. The use of CDU and/or SWAT techniques is a higher level of force when compared to officers "standing a line" or moving a mild to moderately aggressive crowd from an area.

G. The act of staging the CDU in the sightline of an aggressive crowd may be enough to deescalate the situation. However, it can also have the propensity to escalate tensions among a generally peaceful group. The IC should assess the potential response of the crowd to the staging of the CDU.

## X.    COORDINATION WITH OTHER LAW ENFORCEMENT AGENCIES

The USPP operates in locations with multiple overlapping jurisdictions in which several law enforcement and public safety agencies operate. The USPP shall work in close collaboration with these agencies in response to both planned and unplanned demonstrations and special events by establishing responsibilities and lines of communication as promptly as possible. The following guidelines are established to provide more effective and efficient law enforcement services when multiple law enforcement agencies are present.

A. Command of joint operations shall be managed pursuant to methodologies consistent with NIMS/ICS.

B. To the extent possible, all relevant and/or participating agencies shall be included in the planning process.

C. Whether a demonstration or an event is planned or unplanned, the Incident Commander or designee shall ensure the following action are taken.

1. Areas of responsibility should be determined in advance of the demonstration or event or as soon as possible in an unplanned event.

   a. Specific geographical areas of primary responsibility for each participating law enforcement agency should be determined in accordance with each agencies' jurisdiction.

   b. If circumstances require additional resources in an area of either concurrent jurisdiction or within an agency's primary area of responsibility where a Memorandum of Understanding has expanded the scope of other agencies' jurisdiction, each agency shall have access to assistance from the other agencies as may be required.

2. Liaison officers for each participating law enforcement agency should be designated by the respective agency's Chief of Police or equivalent level

ATTACHMENT A

of leadership so that information can be shared, evaluated, and acted upon efficiently.

    a.    Liaison officers should be able to make decisions for their agencies or have a direct line of communication to decisions makers.

    b.    Each USPP designated Liaison Officer should be at least the rank of Lieutenant.

    c.    All partner agencies shall provide a Liaison Officer to be present at the incident command post.

    d.    The Incident Commander shall provide a brief to all Liaison Officers of partner agencies to include

        i.    the Incident Action Plan;

        ii.    the Rules of Engagement;

        iii.    any other relevant information.

3.    Radio Communications shall be established, maintained, and recorded and a fixed and predetermined shared radio frequency shall be employed by all law enforcement agencies involved.

    <u>Note</u>: Where an agency does not have compatible radio capabilities, a USPP liaison officer will be assigned to support/lead the assisting unites - this is generally how we handle this problem.

4.    The selection of the emergency staging area shall be a command decision by the Incident Commander or the Unified Command.

D.    To the extent such notification is practicable, liaison officers shall inform other agencies responding to an event in advance of a dispersal order or if the Incident Commander is ordering the use of crowd control techniques or the deployment of the CDU.

E.    Generally, the USPP works with agencies which are brought in to support the USPP pursuant to a special events agreement as authorized by 54 U.S. Code § 10270(b) or are agencies with jurisdiction or bases of operation in nearby areas.

1.    The USPP should enter into these special events agreements with agencies which have similar training and policies regarding the policing of demonstrations:

    a.    overlapping or concurrent jurisdiction,

    b.    similar law enforcement or public safety missions and/or specializations, or

ATTACHMENT A

    c.    similar CDU training if their CDU is to be deployed

F.    If an unanticipated agency is present pursuant to a call for support from another agency or for any other reason, the following steps shall be taken to ensure effective and efficient coordination of efforts.

    1.    A direct line of communication shall be established between the Incident Commander or designee and the highest ranking official of the unanticipated agency.

    2.    The unanticipated agency shall be incorporated into NIMS/ICS command structure.

    3.    The highest ranking official of the unanticipated agency shall be briefed on the Rules of Engagement.

    4.    If the unanticipated agency mobilizes a CDU or any other special tactics unit, the Incident Commander shall clear their deployment in advance.

    5.    To the extent possible, the procedures set forth in Section X(c) above shall be performed.

    6.    If the above actions do not take place, the efforts taken and the reasons for the failure to coordinate shall be documented and reported to the Chief of Police as soon as possible.

    7.    The Incident Commander shall then inform the unanticipated agency that they are not part of the incident response and may take a support role outside of NPS administered property.

G.    The USPP shall not aid other agencies engaged in the violation of laws and/or constitutional rights.

    1.    In a situation where the Incident Commander, acting in support of another law enforcement agency, believes that the other agency may be engaging in a violation of the law, particularly a First or Fourth Amendment violation, the Incident Commander shall, as promptly as possible and as circumstances allow,

        a.    advise the other agency's on-site supervisor of the USPP's concerns;

        b.    notify the USPP Chief of Police; and

        c.    inform the DOI SOL DPW.

    2.    If the violation involves use of USPP officers to help effect arrests and/or prevent demonstrators from being free to leave or, the Incident

ATTACHMENT A

        Commander shall request the other agency's on-site supervisor to provide demonstrators with dispersal order(s) consistent with the above guidance and an opportunity to comply.

3.        However, if the Incident Commander determines that USPP participation would violate USPP policy and cannot be mutually resolved with the other agency, then they shall notify the other agency's on-site supervisor that the USPP will withdraw from or otherwise not participate in the law enforcement action.

4.        In such situations, the Incident Commander shall make sure that the situation is fully documented in an incident report(s), and that such report(s) are forwarded to the USPP's Office of Professional Responsibility and to the Solicitor's Office.

## XI.    RESPONSIBILITIES

A.        The Incident Commander shall be the official with the overall responsibility for managing an incident, following the standardized ICS roles under the NIMS.

B.        The Special Events Unit, Special Forces shall

1.        determine whether SEU personnel should attend the NPS permit planning process

2.        coordinate all USPP preplanning activities in connection with demonstrations and special events;

3.        initiate all required action to provide police services;

4.        manage the event planning and execution of incident objectives in accordance with methodologies consistent with NIMS/ICS;

5.        evaluate the need and assign resources to staff the demonstrations and events; and

6.        coordinate with the Planning and Policy Unit to establish Special Events Agreements in advance of their potential use.

C.        The Commander, Intelligence and Counter-terrorism shall provide threat assessments.

D.        The Shift Commander's Office shall provide initial guidance to officers responding to an unplanned event. If necessary, the Shift Commander shall respond to the scene and take on the role of Incident Commander.

E.        Supervisory sworn personnel shall

ATTACHMENT A

1.    familiarize themselves with the content of all applicable demonstration or special event orders prior to reporting to their assignments;

2.    share all applicable information to the officers under their command in advance of demonstrations or special events;

3.    assess the attitude of the crowd that is being managed and remind sworn personnel what to expect from the participants and what type(s) of alternative responses sworn personnel may anticipate to ensure the safety and security of all those involved;

4.    constantly observe and communicate with officers under their command and shall ensure that officers comply with orders, maintain control of their actions, are aware of any changes in crowd attitude, behavior or intent, and that special efforts are taken to provide courteous service;

5.    shall exercise discretion in making arrests for minor infractions, as harsh actions by the police could precipitate hostile actions by the crowd; and

6.    ensure that USPP sworn personnel who are showing any indications of stress resulting in unsatisfactory performance or behavior are promptly provided temporary relief.

## XII.  REFERENCES

A.    36 CFR 7.96

B.    36 CFR 1.5; 36

C.    Director's Order #53: Special Park Uses (2-23-2010) [As amended by Memoranda dated August 31 and November 20, 2020]

D.    NPS Management Policies (2006), Section 8.6 – Special Park Uses

E.    Reference Manual (RM) 53: Special Park Uses (June 2009)

F.    U.S. Department of Justice/U.S. Department of Homeland Security, Recommendations for First Amendment-Protected Events for State and Local Law Enforcement Agencies, December 2011.

G.    Guideline Manual *Civil Disturbance Unit*

## XIII.  CHANGE LOG

[This will be used after publication to record describe minor changes as well as the history of the document.]